Matter of Rosbaugh (Town of Lodi) (2024 NY Slip Op 01661)

Matter of Rosbaugh (Town of Lodi)

2024 NY Slip Op 01661

Decided on March 22, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 22, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, MONTOUR, OGDEN, AND DELCONTE, JJ.

1043 CA 23-00370

[*1]LEWIS B. ROSBAUGH AND LYNNE T. ROSBAUGH, PETITIONERS-RESPONDENTS-PLAINTIFFS-RESPONDENTS, AND TOWN OF LODI, RESPONDENT-PETITIONER-DEFENDANT-APPELLANT, ET AL., RESPONDENT-DEFENDANT-RESPONDENT. 

HANCOCK & ESTABROOK, LLP, SYRACUSE (ALAN J. PIERCE OF COUNSEL), FOR RESPONDENT-PETITIONER-DEFENDANT-APPELLANT.
DAVID LEE FOSTER, GENEVA, FOR PETITIONERS-RESPONDENTS-PLAINTIFFS-RESPONDENTS. 

 Appeal from an order and judgment (one paper) of the Supreme Court, Seneca County (Barry L. Porsch, A.J.), entered January 9, 2023, in a proceeding pursuant to CPLR article 75 and action for money damages. The order and judgment confirmed an arbitrator's award and awarded petitioners-respondents-plaintiffs money damages against respondent-petitioner-defendant Town of Lodi. 
It is hereby ORDERED that the order and judgment so appealed from is modified on the law by striking from the second decretal paragraph the language "the date of the commencement of the within action, to wit: November 23, 2011 under index #45715, as computed by the Clerk in the amount of $13,443.48 per year," and substituting therefor the language "the date of the arbitrator's award" and as modified the order and judgment is affirmed without costs.
Memorandum: Petitioners-respondents-plaintiffs (petitioners) commenced an action seeking damages after respondent-petitioner-defendant Town of Lodi (Town) hired respondent-defendant Cranebrook Tree Service & Tree Farm of Auburn, Inc. (Cranebrook) to cut and remove trees on petitioners' property (original action). After years of litigation, the parties agreed to submit the matter to arbitration. At the conclusion of that proceeding, the arbitrator awarded petitioners damages against the Town in the amount of $149,372, consisting of $2,625 for pre-cut wood that was removed by the Town and Cranebrook, $1,700 for property restoration, and $145,047 for treble the stumpage value of petitioners' standing trees ($48,349) pursuant to RPAPL 861 (1), plus interest from the date of the award, i.e., May 3, 2021. Petitioners thereafter filed a petition pursuant to CPLR article 75 to confirm the arbitrator's award indexed to the original action, and the Town filed a separate petition seeking to modify the award by vacating the component of petitioners' award for treble the stumpage value of the trees. The petitions and original action were consolidated into the instant proceeding, and Cranebrook thereafter resolved petitioners' claim. Supreme Court then confirmed the arbitration award against the Town. In the subsequent order and judgment, the court diverted from the arbitration award by awarding petitioners interest "from the date of commencement of the within action, to wit: November 23, 2011," notwithstanding that neither party had challenged the amount of interest or its accrual date in the underlying arbitration award. The Town now appeals.
The Town first contends that the court's confirmation of the component of petitioners' damages award for treble the stumpage value of the trees violates public policy. We reject that contention. While the Town is correct that, under well settled law, " 'the State and its political subdivisions are not subject to punitive damages' " (Cornell v County of Monroe, 187 AD3d 1566, 1567 [4th Dept 2020]) and "[t]reble damages are generally viewed as punitive" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, [*2]385 [2020], rearg denied 35 NY3d 1079, 1081 [2020]), as we explained in Matter of Svenson (Swegan) (133 AD3d 1279, 1280-1281 [4th Dept 2015]), damages awards that include a component of "[t]reble damages pursuant to RPAPL 861 (1) are not equivalent to punitive damages" (id. at 1280; see also Backus v Lyme Adirondack Timberlands II, LLC, 144 AD3d 1454, 1458 [3d Dept 2016]; Western N.Y. Land Conservancy, Inc. v Cullen, 66 AD3d 1461, 1463-1464 [4th Dept 2009], appeal dismissed 13 NY3d 904 [2009], lv denied 14 NY3d 705 [2010], reconsideration denied 15 NY3d 746 [2010]).
Rather, RPAPL 861 (1) authorizes a court—or, in this case, an arbitrator—to determine the total amount of compensatory damages to award on a claim for the wrongful cutting and removal of trees by calculating "treble the stumpage value of the tree or timber or two hundred fifty dollars per tree, or both," in addition to "any permanent and substantial damage caused to the land or the improvements thereon" (RPAPL 861 [1]). As relevant here, "stumpage value" is limited to only "the current fair market value" of the merchantable lumber within a standing tree (RPAPL 861 [3]); it does not include the intrinsic value of a tree in its natural state—such as its environmental, historical and aesthetic qualities—which can be substantially greater to a landowner than the mere marketable lumber value. Thus, it is not the landowner's total compensatory damages, which are measured by what the landowner actually lost, that are trebled under RPAPL 861 (1). Rather, it is merely the fair market value of the merchantable lumber that is trebled, which is only a component of the total compensatory damages to be awarded under the statute when the cutting and removal is without "cause to believe the land was his or her own" (RPAPL 861 [2]; see generally Letter from NY State Dept. of Envtl. Conservation, Sept. 24, 2003, Bill Jacket, L 2003, ch 602; Halstead v Fournia, 160 AD3d 1178, 1181 [3d Dept 2018]).
The Town further contends that the court, in its order and judgment, erred in awarding petitioners interest "from the date of the commencement" of the underlying action, i.e., November 23, 2011. We agree. The arbitration award provided for interest to be paid "from the date of th[e] award," i.e., May 3, 2021, and the court, in its decision and order, merely confirmed the award of the arbitrator, never mentioning interest. Inasmuch as "the arbitration award, upon which the [order and] judgment was based, did not include a provision awarding [petitioners] pre-arbitration award interest," we conclude that the court was "without power to award pre-arbitration award interest" (Dermigny v Harper, 127 AD3d 685, 686 [2d Dept 2015]; see Schiferle v Capital Fence Co., Inc., 155 AD3d 122, 128 n 3 [4th Dept 2017]; Matter of Gruberg [Cortell Group], 143 AD2d 39, 40 [1st Dept 1988]). We therefore modify the order and judgment to award interest only from the date of the arbitrator's award.
All concur except Whalen, P.J., and Lindley, J., who dissent in part and vote to modify in accordance with the following memorandum: We respectfully dissent in part. We agree with the majority that Supreme Court erred in awarding interest from the date of commencement of this action. The arbitrator awarded interest from the date of his award, and petitioners-respondents-plaintiffs (petitioners) moved to confirm the award in its entirety, taking no issue with the accrual date of interest as set by the arbitrator. Similarly, respondent-petitioner-defendant Town of Lodi (Town), in its petition to modify the award, did not seek to vacate the interest portion of the award. In its decision and order, the court confirmed the award in its entirety, including the interest provision. In its subsequent order and judgment, however, the court, after stating that it was confirming the award, inexplicably ordered that interest on the award of damages shall run from the "date of commencement," relief that petitioners did not even request. As the majority concludes, the order and judgment must be modified to provide that interest shall run from the date of the arbitration award.
Unlike the majority, however, we conclude that the arbitrator lacked authority to award treble damages against the Town under RPAPL 861 (1). It is well settled that " '[d]amages awarded for punitive purposes . . . are not sensibly assessed against [a] governmental entity' " (Sharapata v Town of Islip, 56 NY2d 332, 339 [1982], quoting City of Newport v Fact Concerts, 453 US 247, 267 [1981]; see Martinetti v Town of New Hartford Police Dept., 307 AD2d 735, 737 [4th Dept 2003]). "[T]he twin justifications for punitive damages—punishment and deterrence—are hardly advanced when applied to a governmental unit" inasmuch as the persons who would bear the burden of punishment are taxpayers who have done nothing wrong (Sharapata, 56 NY2d at 338). Additionally, "a statute in derogation of the sovereignty of a State must be strictly construed, waiver of immunity by inference being disfavored" (id. at 336; see Cornell v County of Monroe, 187 AD3d 1566, 1567 [4th Dept 2020]).
Here, there is no indication in RPAPL 861 or its legislative history that the legislature "discussed, debated, or even contemplated exposing" municipalities to treble damages (Krohn v New York City Police Dept., 2 NY3d 329, 336 [2004]), and the majority does not suggest otherwise. Instead, the majority concludes that the treble damages provision of RPAPL 861 is not punitive in nature because it is intended merely to compensate the property owner for the total value of their loss arising from the wrongful cutting or removal of trees and timber. We cannot agree.
RPAPL 861 (1) provides that an owner of property on which trees are cut or taken by another person may maintain an action against such person "for treble the stumpage value of the tree or timber or two hundred fifty dollars per tree, or both and for any permanent and substantial damage caused to the land or the improvements thereon as a result of such violation." If, however, the trespasser "had cause to believe the land was [their] own," they do not have to pay treble the stumpage value of the trees or timber wrongfully taken (RPAPL 861 [2]). In other words, "a trespasser's good faith belief in a legal right to harvest timber does not insulate that person from the imposition of statutory damages, 'but merely saves [them] from having to pay the plaintiff treble damages' " (Halstead v Fournia, 160 AD3d 1178, 1182 [3d Dept 2018]; see Fernandes v Morgan, 95 AD3d 1626, 1628 [3d Dept 2012]).
Under the statute, "stumpage value" is defined as "the current fair market value of a tree as it stands prior to the time of sale, cutting, or removal" (RPAPL 861 [3]). If, as the majority concludes, the treble damages provision of RPAPL 861 is intended merely to compensate owners of trees or timber wrongfully cut or taken by trespassers, then it follows that the legislature intended that owners of trees cut down by trespassers who harvest trees in good faith should not be made whole and instead receive only one-third of the market value of their trees. In our view, such an interpretation of the statute would be unreasonable and is not supported by the legislative history, which evinces an intent to "provide for greater deterrence for the knowing offender while at the same time promote more diligence and care on the part of legitimate timber harvesters to prevent inadvertent trespass and timber theft" (Letter from NY State Dept. of Envtl. Conservation, Sept. 24, 2003, Bill Jacket, L 2003, ch 602 at 24; see also Letter from Adirondack Mountain Club, June 30, 2003, Bill Jacket, L 2003, ch 602 at 31).
Although we held in Matter of Svenson (Swegan) (133 AD3d 1279, 1280-1281 [4th Dept 2015]) that "[t]reble damages pursuant to RPAPL 861 (1) are not equivalent to punitive damages" and are not "punitive in nature," the latter statement was dicta in a matter involving two private homeowners. Moreover, the issue in Svenson juxtaposed punitive damages under a trespass cause of action and treble damages under RPAPL 861. This proceeding, in contrast, does not include a trespass cause of action, does not involve an award of punitive damages and, more importantly, involves a municipality against whom neither an arbitrator nor a court may assess damages that are punitive in nature. We are thus faced with an issue not addressed in Svenson, i.e., whether the award of treble damages assessed against a municipality has a punitive purpose, and for the reasons set forth above we answer that question in the affirmative. We therefore conclude that the court erred in granting that part of the petition of petitioners seeking to confirm the arbitration award insofar as it awarded them treble damages against the Town and denying the Town's petition seeking to vacate the award to that extent. We would therefore further modify the order and judgment accordingly.
Entered: March 22, 2024
Ann Dillon Flynn
Clerk of the Court